```
1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
2                            MIAMI DIVISION
                     CASE NO.  15-20540-CR-KMM
3

4    UNITED STATES OF AMERICA,

5                    Plaintiff,

6          vs.

7                                        Miami, Florida
                                         November 8, 2017
8    SERGIO MEJIA-DUARTE,                Pages 1-22

9                    Defendant.
     _____

10

11                   TRANSCRIPT OF STATUS CONFERENCE
                BEFORE THE HONORABLE ANDREA M. SIMONTON
12                  UNITED STATES MAGISTRATE JUDGE

13

     APPEARANCES:
14
     FOR THE PLAINTIFF:
15                             United States Attorney's Office
                               BY:  WALTER NORKIN,  A.U.S.A.
16                             99 Northeast Fourth Street
                               Miami,  Florida 33132
17                             Appearing telephonically

18   FOR THE DEFENDANT:
                               BY: LOUIS CASUSO, ESQ.
19                             14 Northeast First Avenue
                               Suite 702
20                             Miami, Florida 33132

21

22   TRANSCRIBED BY:        DAWN M. SAVINO, RPR, CRR
                            Official Court Stenographer
23                          400 N. Miami Avenue, 10S03
                            Miami, Florida  33128
24                          Telephone:  305-523-5598

25
```

1        P-R-O-C-E-E-D-I-N-G-S

2        COURTROOM DEPUTY:  Calling case number

3   15-20540-criminal, Chief Judge Moore, United States versus

4   Sergio Mejia-Duarte.

5        Counsel, would you please note your appearances for the

6   record.

7        MR. NORKIN:  Walter Norkin for the Government.  Good

8   morning, Your Honor, and thank you for allowing me to appearing

9   by phone.

10       THE COURT:  Okay.  No problem.

11       And Mr. Casuso, you're here in the courtroom.  Do you

12  want to announce your presence?

13       MR. CASUSO:  Good afternoon, Judge.  Louis Casuso on

14  behalf of Sergio Mejia.

15       THE COURT:  Okay.  Thank you.

16       I wanted to set this for a status conference regarding

17  the unopposed motion for Garcia hearing as soon as possible

18  because in looking at the motion, which is unopposed, I had a

19  few questions and -- at which address matters that

20  understandably are not included in the motion.  And specifically

21  -- and also I wanted to set a date for a hearing.  As you know,

22  Chief Judge Moore has set this for trial January 8th, so if new

23  counsel has to come in, they need to come in sooner rather than

24  later, and so I want to make sure that we resolve this as

25  expeditiously as we can.

1    And the first question I have is with respect to C.W.

2    1, who is he?  Is he a defendant?  Is he just a witness who was

3    never charged?  Does Mr. Casuso presently represent him?  Did he

4    previously represent him?  Does C.W. 1 have his own attorney?

5    So those are all things that I think are relevant to the issues

6    that are presented in the unopposed motion, and I don't know who

7    is in the best position to answer those questions, whether it's

8    you Mr. Norkin or Mr. Casuso.  So...

9         MR. NORKIN:  I'm happy --

10         THE COURT:  I was going to say, so just jump right in,

11    whoever wants to address the issues.

12         MR. NORKIN:  C.W. 1 is a defendant who was charged in

13    the Southern District of Florida.  He has already been

14    sentenced, but he continues to cooperate and hopes, slash

15    expects, to get a Rule 35 motion in his favor at some point.

16    Mr. Casuso represented him during the pendency of the criminal

17    case, and my understanding is that if there was to be a Rule 35

18    motion, Mr. Casuso would be the one who would speak on behalf of

19    C.W. 1 at that time.

20         THE COURT:  So when you consult with C.W. 1 and -- do

21    you talk to him outside the presence of counsel or in the

22    presence of counsel, or how does that work?

23         MR. NORKIN:  It's been both.  Counsel is always welcome

24    at any meeting.  Right now, C.W. 1, for example, is in a jail in

25    New York and has met with, sometimes it's an SDFL prosecutor,

1    sometimes it's an SDNY prosecutor.

2          THE COURT:  Okay.  And by that, you mean sometimes it's

3    a Southern District of Florida prosecutor, and sometimes it's a

4    Southern District of New York prosecutor?  Is that what you're

5    saying?

6          MR. NORKIN:  Correct.

7          THE COURT:  Okay.

8          MR. NORKIN:  That's correct.  And whenever possible, we

9    try to schedule those meetings and debriefings with C.W. 1 at a

10   time convenient for counsel, but sometimes that's not possible.

11   And in an effort to not impede the cooperation, counsel allows

12   us to meet with C.W. 1 without his presence.

13         THE COURT:  Okay.  So Mr. Casuso, if this case proceeds

14   to trial, it seems to me that you have an unwaivable conflict of

15   interest.  You can't be representing the defendant who's

16   challenging C.W. 1 and also representing C.W. 1 in an effort to

17   get a lower sentence for his truthful testimony.  I mean, it

18   looks to me like the classic *United States versus Wheat*

19   situation where even if both defendants agree, the past

20   defendant, or the convicted defendant I should say, and the one

21   on trial, it just seems to me to put you in an impossible

22   situation, unlike a situation where there's past representation

23   but not current representation.  And even then, it's a delicate

24   situation.

25         So Mr. Casuso, let me hear your position on this.

1        MR. CASUSO:  Well, the witness's name is Carlos Lobo.

2   I represented him here and I do continue to represent him.

3        THE COURT:  Is that L-O-B-O, Lobo?

4        MR. CASUSO:  L-O-B-O, yes.

5        THE COURT:  Okay.

6        MR. CASUSO:  Mr. Lobo was sentenced here by Judge

7   Gayles to 20 years, and he's up in New York on a cooperating --

8   in a case in New York.

9        Now, regarding the meeting with Mr. Lobo in New York,

10  no one ever told me that they were meeting with Mr. Lobo in New

11  York outside my presence, just for the record to correct it.

12  Okay?  No one ever called me to meet with any agents or any

13  prosecutors in New York with Mr. Lobo.  Mr. Lobo was there to

14  testify in a case in which the people ended up pleading guilty,

15  all of them.

16       Now, regarding Mr. Lobo, I spoke to him when this case

17  came up.  Okay.  If this case is pled out, Judge, actually, Lobo

18  and Mr. Mejia apparently were in the same business together, not

19  with each other, but in the same, let's say the drug business

20  together in Honduras.  They're both Honduran nationals.  If the

21  case is pled out, and frankly this case here, Mejia case, is

22  pled out, I don't think there will be any conflict.  I spoke to

23  Mr. Lobo, he has no problem with me representing Mr. Mejia.

24  Mr. Mejia knows when he retained me that I represented Mr. Lobo.

25       I think the problem would be if Mr. Mejia decides to go

6

1   to trial, and if he decides to go to trial, Judge, then we have,

2   like, maybe a problem at that time.  But I don't think -- we had

3   a meeting, Mr. Norkin and I and Mr. Mejia, and I'm going to talk

4   to Mr. Mejia to see what decision is it that he wants to make in

5   this case.  Obviously if he goes to trial and if they decide to

6   call Mr. Lobo, then it's a different matter.  But even then, you

7   know, what Mr. Lobo told me, I don't even know if they're going

8   to call him in the case, but just to be safe, let's see what

9   Mr. Mejia decides to do as far as pleading or going to trial.

10  That's what I suggest.

11          THE COURT:  Okay.  And I mean, it seems to me that if

12  -- seems to me that unless the Government can unequivocally

13  state that it's not going to call Mr. Lobo, Mr. Mejia needs his

14  own counsel.  I think at a trial it's an impossible situation if

15  there is a possibility that Mr. Lobo will be called and I think,

16  you know, Mr. Norkin is an honorable person.  I have no reason

17  to believe that he would pretend he was a witness or potential

18  witness if he wasn't.

19          MR. CASUSO:  No, Judge.  Of course not.

20          THE COURT:  Yeah.  So -- and we can't wait until, you

21  know, the Government's rebuttal case at trial when they decide

22  they need to put Mr. Lobo on the stand and there you are -- and

23  Judge Moore then takes the extraordinary position of terminating

24  me on the spot for not for seeing -- and bouncing you from the

25  CJA list and referring Mr. Norkin to the Bar, whatever it is.  I

1   mean, we don't want to have -- we can't have that situation,

2   obviously.

3           I agree with you and the Government, I think, that if

4   Mr. Mejia decides he's going to plead guilty, we still need to

5   have a Garcia-type hearing to weigh the conflict, but at that

6   point, it's a conflict that's waivable.  I think it has to be

7   waivable by both sides because, you know, obviously -- well, not

8   obviously, but possibly Mr. Mejia would be seeking, you know, a

9   reduction in his sentence based upon cooperation, and possibly

10  his cooperation to be to the detriment of Mr. Lobo who is also

11  seeking a reduction in his sentence for cooperation.  But I

12  think that's the kind of conflict that can be waived.  That's,

13  like, my gut reaction.

14          I got this motion yesterday.  Quite frankly, I'm

15  relying on my background as opposed to any, you know, current

16  research that I've done on the issue.  Mr. Norkin -- and I'll

17  say one more thing before I ask you for your position on this,

18  Mr. Norkin.  Obviously Mr. Mejia needs some time to make his

19  decision on whether to plead guilty or not.  I will say that if

20  he decides to plead guilty, Judge Moore will refer it to me to

21  take the guilty plea, if the parties consent.  But it needs to

22  be something that happens sooner rather than later, because we

23  will need new counsel in the case if the case is going to trial,

24  and I think you both know Chief Judge Moore's position on

25  granting continuances of trials.

1           Now, I know this is pretty quick in the process, but I

2    also know that Mr. Mejia was extradited, so presumably he has a

3    pretty good understanding of the charges against him, and I

4    don't know if you were involved in his representation in the

5    extradition proceedings.  I don't know whether he contested

6    those or he didn't contest them.  I don't know anything about

7    that background.  Excuse me?

8           MR. CASUSO:  He did not contest them.  I saw him in

9    Honduras, Judge.

10          THE COURT:  Okay.

11          MR. CASUSO:  But, of course, I mean, I'm not a lawyer

12   in Honduras, I didn't represent him in the extradition in

13   Honduras.  But I'll tell you, Judge, I saw him in the jail and

14   the thing about a Honduran jail --

15          THE COURT:  He wants to get out as soon as possible.

16          MR. CASUSO:  There's no attorney-client privilege.  You

17   see your client with four guards that are listening to

18   everything you say, so you have to measure your words.  However,

19   Mr. Lobo at least was a very prolific drug importer, and he

20   knows a lot of people.  Mr. Mejia -- Mr. Mejia's exposure in

21   this case is very serious and this is why -- and it's even more

22   serious if he loses at trial, and this is something that after

23   speaking with Mr. Norkin yesterday, this is something I'm going

24   to speak about with him this afternoon.  As soon as I -- later

25   on, probably after 5, I'm going to go see Mr. Mejia and see what

1    he thought about our conversation yesterday.

2              THE COURT:  Okay.

3              MR. CASUSO:  And go over the guidelines with him

4    because really his exposure is great, Judge.

5              THE COURT:  Right.  And even though the indictment is,

6    to characterize it generously, sparse in terms of detail --

7              MR. CASUSO:  Very serious.

8              THE COURT:  -- it appears from the -- you know, from

9    the penalty sheet that the maximum sentence appears to be life

10   imprisonment and so of course it is serious.

11             My other issue in terms of setting this for a hearing

12   is I'm going to need a Garcia hearing with Mr. Lobo present.

13             MR. CASUSO:  Judge --

14             THE COURT:  I think.

15             MR. CASUSO:  Okay.  I'm sending -- I've had this

16   problem, the same thing with Mr. Lobo in two other cases.  And I

17   had with a case in Fort Lauderdale, and I don't remember another

18   one, but I sent them a waiver in the other case, he signed the

19   waiver and, you know, he had no problem.  I spoke to him about

20   this.  He has no problem.  I sent him a waiver, but he is up in

21   New York.

22             And the thing, Judge, is that I really would hate to

23   have him moved to Florida because the prosecutor wants him up in

24   New York for the sentencing hearing which is in December, in

25   case he needs him.  And he's been up there and really, I would

1    -- you know, would hate to have him here for -- you know, if

2    this man is going to plead.  I do have a waiver from Mr. Mejia.

3            THE COURT:  Okay.  Well --

4            MR. CASUSO:  I was waiting for Mr. Lobo's waiver to get

5    to me.

6            THE COURT:  Okay.  Well, there's another possibility

7    that I could arrange to conduct the hearing with Mr. Lobo

8    remotely via like a video conference.  I've done that in the

9    past.

10            MR. CASUSO:  He's in the Federal Detention Center in

11    Brooklyn.

12            THE COURT:  Right.  It should not be a problem because

13    they can bring the equipment in here and they can hook it up and

14    they can arrange a time for him to be, you know, in New York as

15    long as you've had an adequate opportunity to talk to him, you

16    know, beforehand.  And so we can arrange that.  But I do believe

17    that I need to speak to him, you know, and have the hearing with

18    respect to him.  I don't know who the magistrate judge was in

19    Fort Lauderdale or whether they just accepted the waiver.

20            MR. CASUSO:  Dimitrouleas.

21            THE COURT:  Okay.

22            MR. CASUSO:  It was the District Court Judge.

23            THE COURT:  Okay.  And he just relied upon the written

24    waiver?

25            MR. CASUSO:  Yes, ma'am.

```
 1          THE COURT:  As opposed to having a hearing?  I would

 2    feel more comfortable if I actually spoke to Mr. Lobo and went

 3    through a colloquy.  It doesn't have to be the same day or time

 4    as with Mr. Mejia, it can be separate.  But that's, you know,

 5    that's my thought on that issue.

 6          Now I don't know, Mr. Norkin, what your position is on

 7    all of this.

 8          MR. NORKIN:  Your Honor, I think I see the situation as

 9    you do as far as if Mr. Mejia were to proceed to trial, then

10    it's really sticky and likely an unwaivable conflict.  But if

11    Mr. Mejia is considering a plea, it is something that is

12    waivable where we're not seeking the removal of Mr. Casuso from

13    the case or anything like that.  We just want a thorough

14    colloquy, including pointing out that even a decision to plead

15    guilty, for example, upon advice of counsel, there's a conflict

16    or a potential conflict there that he should be aware of and

17    just make sure he waives.  Our view is that as between Mr. Lobo

18    and Mr. Mejia, the potential harm is greater or more likely, I

19    should say, if there's going to be any harm to Mr. Mejia because

20    Mr. Lobo would get credit if Mr. Mejia proceeded to trial, or he

21    would get credit -- if Mr. Mejia pleaded, he would get credit

22    either way.  And the potential harm to Mr. Lobo would come if it

23    turns out that Mr. Mejia cooperates and provides information

24    that's inconsistent from what Mr. Lobo has said and, you know,

25    causes a problem that way.  But it seems that both as far as
```

1   timing being of the essence and the greater harm, that kind of

2   falls more squarely on to Mr. Mejia's case, and so we would want

3   to have that kind of addressed earlier.

4              As far as Mr. Lobo's case, especially because at this

5   point there's not a pending matter here in the Southern District

6   of Florida, I don't know that the Government would take the

7   position that it can't be done just by a waiver on paper, but

8   certainly the Government would have no opposition to the Court

9   conducting a hearing if the Court believes that's more

10  appropriate.

11             THE COURT:  Okay.  I've always had a hearing.

12  Sometimes it's not by video, sometimes it's telephonic.  Usually

13  it's in person unless there's a reason for it not to be in

14  person.  Sometimes people are happy to travel back to the

15  Southern District of Florida for whatever the reason.

16             MR. CASUSO:  He won't be happy.

17             THE COURT:  I was going to say but I don't think that's

18  the case here, and I think there could also be some concerns,

19  security concerns, in terms of transportation and housing and

20  just in general, you know, prisoner movement when it's not

21  necessary.  You know, I know it causes some concerns.  And --

22             MR. CASUSO:  Especially, Judge, during the holidays.

23  And his testimony, if it's needed at all in New York, is going

24  to be needed in December or January.  There's a number of

25  defendants.

1          THE COURT:  Okay.  Well, if it's needed here in

2     January, on January 8th, there's going to be a fight between the

3     US Attorney's Offices which may result in Mr. Lobo being like in

4     North Carolina during both trials.

5          But in any event, what I would like to do then is I can

6     set this now for a Garcia hearing, but I don't know how much

7     time Mr. Mejia has and I want to make sure that Mr. Mejia can

8     honestly answer that he's had sufficient time to consider the

9     charges and his options and think about it.  On the other hand,

10    I have the competing concern of, you know, of the trial date,

11    which was not a particularly -- well, in the realm of Chief

12    Judge Moore, this was not a particularly quick trial date.  I

13    think in view of the holidays, he gave more time for trial than

14    typically.  Typically, especially in light of the 70 days, you

15    know, speedy trial deadline, he tends to set his trials, you

16    know, 30 to 45 days out.  Here, it's actually a couple of months

17    out which is more than that.

18         So what do you think, Mr. Casuso, would be a good time

19    to -- you know, to either have the Garcia hearing or should we

20    have a status conference earlier?  You know, I'll defer to you

21    because you know the case, you know your schedule, you know

22    Mr. Mejia.

23         MR. CASUSO:  Next week?

24         THE COURT:  And you know Chief Judge Moore.

25         MR. CASUSO:  Next week.

1        THE COURT:  Oh, next week?  Okay.

2        MR. CASUSO:  We can do it next week, Judge, if you'd

3   like.  Sure.

4        THE COURT:  Should we set it for a status conference or

5   a Garcia hearing?

6        MR. CASUSO:  Whatever you'd like, Judge.

7        THE COURT:  Okay.  Mr. Norkin?

8        MR. NORKIN:  No one is asking -- I was going to say no

9   one is asking the Government, but I think we'll be able to do a

10   Garcia hearing.  I think it will be -- I was at the meeting

11   yesterday with Mr. Casuso and Mr. Mejia, and I'm optimistic that

12   I think Mr. Mejia sees things clearly and he'll be able to make

13   decisions sooner rather than later.  So I think if it was set

14   down for Monday the 13th, we could have a Garcia hearing on that

15   date.

16        THE COURT:  Well, I think that's a little fast.  I was

17   thinking -- yes.

18        MR. CASUSO:  You know, I think we ought to set it more

19   toward maybe Thursday, something like that.  He needs to --

20   Mr. Mejia, I mean, I know him, I've gotten to know him, and he

21   needs to think about this thing very clearly.  And actually,

22   Judge, he's only been here like about a week or maybe a week and

23   a half, and I just don't want to go in -- I mean, he needs to

24   know what decision he's going to make in this case.  I don't

25   want to push him into a decision.  He needs to come to his own

1    decision in the case, knowing not so much what the evidence is

2    but what the consequences are.  And I think give him a couple of

3    days.  I'm going to go see him today.

4            THE COURT:  Well, one concern I have is the

5    Government's discovery because I think that you're -- even

6    though you're saying he needs to be more focused on the

7    consequences, I think it's important that the Government provide

8    its discovery, and I don't think that I would feel comfortable

9    getting a waiver of conflict or a guilty plea before the

10   Government has provided its discovery.  Now, I know that -- I

11   know that the Government, you know, that he was just arraigned I

12   think on the first of November.

13           MR. CASUSO:  Yes.

14           THE COURT:  So the Government's discovery isn't due

15   until November 15th.  Sometimes the Government's able to provide

16   it earlier on rather than later.

17           MR. NORKIN:  Your Honor?

18           THE COURT:  Yes.

19           MR. NORKIN:  If I may, the discovery in this case is

20   almost entirely cooperator statements and so that's why we had

21   the meeting yesterday.  We had a reverse proffer where the

22   Government laid out what the expected testimony would be and

23   gave him some ideas about who might be witnesses against him.

24   So the Government has, in fact, provided the discovery in this

25   case.

1        THE COURT:  Although perhaps not the Giglio material.

2        MR. NORKIN:  Correct.

3        THE COURT:  Or Brady material which, you know --

4        MR. NORKIN:  Well no, Brady, we don't know of any

5   Brady.  That's provided first instance.  We don't wait for a

6   deadline for that.  Giglio, we do wait until a time closer to

7   trial when we have an idea of witnesses.

8        THE COURT:  Okay.  As far as Rule 16 and as far as

9   Brady, that's already been provided.

10       THE COURT:  Okay.  Because as I said, I think it's a

11  recipe for disaster to not have something like that on the

12  record.

13       MR. CASUSO:  I think they need to send him the

14  discovery, Judge.  I think we need to share that.  I think it's

15  important that I share the discovery even if it's nothing, okay.

16  I need to sit down with him so he knows, because he's there with

17  all these prisoners and they all talk about their discovery and,

18  you know, I think he should get his discovery.

19       THE COURT:  So Mr. Norkin, you need to file, I think, a

20  formal discovery response and Mr. Casuso needs to be able to

21  review it with him.  I set this pretty quickly not with the idea

22  that we were going to have a Garcia hearing in a week, but with

23  the idea that I needed to figure out do I need to order a

24  prisoner from New York.  Do the parties agree that if this is

25  not going to be a plea, but is going to be a trial, there needs

1   to be new counsel.  Are we talking only about a waiver in the

2   event there's a plea and if so, then we need to make sure we

3   give him the time to set a plea and I didn't want to wait until

4   Christmas to do this.  So that's my concern.

5       So how quickly do you think you can get a formal

6   discovery request out or response?

7       MR. NORKIN:  I can file the response within 48 hours.

8   It's going to be -- to quote Mr. Casuso, it's going to be

9   nothing, so to speak, because the discovery is really -- it's

10  witness statements and --

11      THE COURT:  Well, that's important for him -- it's

12  important for a defendant to know that because a calculus in

13  terms of whether to go to trial may be do you have any recorded

14  statements of him; do you have any fingerprints of his on any

15  cocaine that was distributed, wherever it might have been

16  distributed, or whatever the drug may be.  I think it's cocaine.

17  I mean, so I think the absence of evidence from the Government

18  is equally important because a defendant could plead guilty and

19  then say I had no idea that the Government didn't have boatloads

20  of, you know, documents.  Do you have travel records of his that

21  you intend to offer?

22      MR. NORKIN:  He was informed of all that yesterday, but

23  I will make that a formal filing.

24      THE COURT:  Right, and I think that's -- like I say, I

25  think it's important for him to get that information and that it

1    be documented so that when Mr. Casuso's successor files a 2255

2    --

3              MR. CASUSO:  Exactly.

4              THE COURT:  It's in the record without you, Mr. Norkin,

5    having to testify as to what happened during this proffer

6    session or Mr. Casuso having to remember what happened in this

7    proffer session.  So I think that -- you know, I certainly

8    applaud the two of you for working together so cooperatively.

9              Now, it seems to me that I can set this if you get it

10   out -- Mr. Casuso can go to see him, I can set this for -- let

11   me look at my -- okay.  I can set this for Thursday afternoon

12   the 16th, or I can set it for the week of the 20th.  I don't

13   know if any of you have plans to be out for Thanksgiving.  I

14   wasn't suggesting setting it Thanksgiving Day, by the way.

15             MR. CASUSO:  The week of the 20th is better for me,

16   Judge.

17             THE COURT:  Okay.

18             MR. CASUSO:  It gives me more time to bond with this

19   man, okay, so he can trust what I say.

20             THE COURT:  And again, I think that's an important --

21   that's an important consideration, and one of the reasons I

22   wanted to talk to you guys, I should say to the parties as

23   opposed to you guys, but to the parties early on, you know, was

24   so we could straighten -- you know, straighten these things out.

25             I can do it the morning of the 20th, I can do it the

```
 1    21st.  Let me see what -- I've got a settlement conference in
 2    the morning and -- I can do it the afternoon of Tuesday the 21st
 3    at either 2 or 3:30.  I've got a couple of hearings that -- I've
 4    got a hearing at 3, but it's like a five minute hearing if it
 5    even goes.  So I could do it as early as 3:15 on Tuesday or I
 6    could do it on Wednesday the 22nd at any time because --
 7              MR. CASUSO:  The date is good for me, Judge.
 8              THE COURT:  Okay.  Mr. Norkin?
 9              MR. NORKIN:  I'm sorry, what was -- Mr. Casuso, what
10    day is good?
11              THE COURT:  He said any day is good for him.  He's
12    being very --
13              MR. CASUSO:  20th, 21st, 22nd.
14              THE COURT:  Yeah.
15              MR. NORKIN:  The 20th and the 21st, any time is fine.
16    The 22nd gets a little bit more complicated for me.
17              THE COURT:  Okay.  Okay.  So why don't we do it on the
18    21st then at 3:15.
19              MR. NORKIN:  Sure.
20              THE COURT:  That will be a Garcia hearing. I'm going to
21    set it for a Garcia hearing with respect to Mr. Mejia.
22              MR. CASUSO:  Okay.
23              THE COURT:  And I may also set the -- and I'll go
24    through the -- I'd like to also have Mr. Lobo on telephonically
25    so I don't have to go through the whole colloquy separately with
```

1    both of them.  So we're going to try to do Mr. Lobo

2    telephonically, that should give everybody enough time to review

3    that.  I take it -- can you be in communication with Mr. Lobo?

4    Do you have a way of --

5          MR. CASUSO:  Sure, Judge.

6          THE COURT:  -- communicating with him?  And so I'll

7    need some --

8          MR. NORKIN:  And I'll reach out on the Government's

9    side to make sure that they're all aware of that as well.

10         THE COURT:  Okay.  And I think telephonically is

11   sufficient.  I don't think we need to worry about video.  Will

12   you recognize his voice, Mr. Casuso?  Mr. Norkin?  Okay.

13         And so what we'll do is we'll try to, you know, make

14   arrangements to have him appear telephonically from -- I don't

15   know.  What facility did you say he was in?

16         MR. CASUSO:  Brooklyn, New York.  There's two of them

17   side by side.

18         THE COURT:  Okay.  And which one -- I guess the Bureau

19   of Prisons website would let us know that.

20         MR. CASUSO:  They look kind of like the same kind of

21   building of -- one of them I think is for pretrial and the other

22   one is for other people.

23         THE COURT:  Well, you're supposed to keep pretrial

24   detainees separate from sentenced defendants so --

25         MR. CASUSO:  I think so, yeah.

1    THE COURT:  What's the under -- what is Mr. Lobo's

2  first name?  You said Carlos?

3    MR. CASUSO:  Carlos.

4    THE COURT:  And do you know, do either of you know the

5  case number in front of Judge Gayles?

6    MR. CASUSO:  I can find out, Judge.

7    THE COURT:  Okay.  I can probably find that out as

8  well.  Okay.  Because we will need to make sure that we have

9  arrangements with the prison there.  And Mr. Norkin, if you can

10 -- you know, it may be easier for you to reach out through your

11 contacts in New York, and they will probably be particularly

12 eager to help you if they know that.  If they don't, I may writ

13 him down here and he may not be available for their sentencing.

14    MR. NORKIN:  I will make sure they understand the Court

15 is being merciful.

16    THE COURT:  Okay.  Is there anything else that I need

17 to do today that you can think of?  Mr. Casuso?

18    MR. CASUSO:  No, Your Honor.

19    THE COURT:  Okay.  Mr. Norkin?

20    MR. NORKIN:  No, Judge.

21    THE COURT:  Okay.  And I assume, Mr. Casuso, if he

22 decides he does not want to plead guilty, at the appropriate

23 time you'll file a motion to withdraw and there will be a

24 substitution?

25    MR. CASUSO:  Yes, Your Honor.

1           THE COURT:  And if you do it before the hearing, then

2  we can -- you know, we'll just cancel the hearing because there

3  won't be a conflict anymore.

4           MR. CASUSO:  Okay.

5           THE COURT:  Okay.  Well, thank you very much.  I really

6  appreciate you coming here.  I know, Mr. Casuso, you have to

7  dash, to the extent you can dash.

8           MR. CASUSO:  Not anymore.

9           THE COURT:  You don't?

10          MR. CASUSO:  Not anymore.  They cancelled it, Judge.

11  Thank God.

12          THE COURT:  Okay.  I'm glad that that hearing was

13  cancelled, and I do appreciate you coming here directly from

14  Judge Cooke's chambers as well.

15          MR. CASUSO:  Nice to see you, Judge.

16          THE COURT:  Good to see you.  Thank you.  We'll be in

17  recess.

18          MR. NORKIN:  Thank you, Judge.

19          (PROCEEDINGS CONCLUDED)

20                   **C E R T I F I C A T E**
I certify that the foregoing is a correct transcript from the

21  record of proceedings in the above-entitled matter.

22  <u>4/8/2020</u>        <u>/s/ Dawn M. Savino, RPR, CRR</u>
    Date               DAWN M. SAVINO, RPR, CRR

23

24

25