```
 1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
 2                          MIAMI DIVISION
                    CASE NO.  15-20540-CR-KMM
 3

 4   UNITED STATES OF AMERICA,

 5                   Plaintiff,

 6        vs.

 7                                        Miami, Florida
                                          November 21, 2017
 8   SERGIO MEJIA-DUARTE,                 Pages 1-49

 9                   Defendant.
     _____

10                    TRANSCRIPT OF GARCIA HEARING
11          BEFORE THE HONORABLE ANDREA M. SIMONTON
                  UNITED STATES MAGISTRATE JUDGE
12
     APPEARANCES:
13
     FOR THE PLAINTIFF:
14                            United States Attorney's Office
                              BY:  WALTER NORKIN,  A.U.S.A.
15                            99 Northeast Fourth Street
                              Miami,  Florida 33132
16
     FOR THE DEFENDANT:
17                            BY: LOUIS CASUSO, ESQ.
                              14 Northeast First Avenue
18                            Suite 702
                              Miami, Florida 33132
19   ALSO PRESENT:
                              Eric Cohen, AFPD
20                            Case Manager Kirton - by telephone
                              Carlos Arnoldo Lobo - by telephone
21                            Spanish Interpreters

22
     TRANSCRIBED BY:          DAWN M. SAVINO, RPR, CRR
23                            Official Court Stenographer
                              400 N. Miami Avenue, 10S03
24                            Miami, Florida  33128
                              Telephone:  305-523-5598
25
```

```
1                    P-R-O-C-E-E-D-I-N-G-S

2           COURTROOM DEPUTY:  Calling case number

3    15-20540-criminal-Chief Judge Moore, United States versus Sergio

4    Mejia-Duarte and Carlos Arnaldo Lobo in case number

5    11-20358-criminal-Judge Gayles is on the telephone.

6           Counsel, would you please note your appearances for the

7    record?

8           MR. NORKIN:  Walter Norkin for the Government.  Good

9    afternoon, Your Honor, and thank you for accommodating us with

10   the telephone call.

11          THE COURT:  Okay.  Thank you.

12          MR. CASUSO:  Good afternoon, Your Honor.  Louis Casuso,

13   and I'm here on behalf of Sergio Mejia-Duarte in the case before

14   this Court, and as the Court knows, I also represent Carlos

15   Arnaldo Lobo who is on the phone.

16          THE COURT:  Okay.  Mr. Lobo, are you able to hear us?

17          MR. CASUSO:  He needs an interpreter, Judge.

18          THE COURT:  Okay.  Then we'll --

19          MS. KIRTON:  Okay.  Hello, Your Honor.  My name is Case

20   Manager Kirton, I'm calling on behalf of Mr. Lobo.  He does not

21   speak English.  He is Spanish-speaking.

22          THE COURT:  Okay.  We have a Spanish-speaking

23   interpreter, so I'll ask her to not do simultaneous

24   interpretation.

25          MS. KIRTON:  Okay.  Great.
```

```
1              THE COURT:  She'll have to do it a sentence at a time.

2              MR. CASUSO:  You want me to start again, Judge?

3              THE COURT:  Yes.  Counsel, note your appearances for

4    the record, please.

5              MR. NORKIN:  Walter Norkin for the Government.

6              MR. CASUSO:  And good afternoon, Your Honor.  Louis

7    Casuso, and I'm here on behalf of Sergio Mejia-Duarte who is

8    before the Court in person with the aid of the interpreter, and

9    as the Court knows, I also represent Carlos Arnaldo Lobo who is

10   on the phone and he is in New York.

11             THE COURT:  Okay.  You need to break it up a little

12   more for the interpreter.

13             Okay.  Mr. Lobo, are you able to hear me and understand

14   me through the use of the Spanish interpreter?

15             MS. KIRTON:  Right.  They have an interpreter on the

16   line.  Can you hear the interpreter?  Can you hear the

17   interpreter?

18             DEFENDANT LOBO:  (Through Spanish Interpreter) I need

19   an interpreter.

20             MS. KIRTON:  Do you hear him?  Come around.  Come

21   around.

22             THE COURT:  Maybe he isn't hearing you which is --

23   okay.  Okay.

24             Mr. Lobo, are you able to hear me and understand me

25   through the aid of the Spanish interpreter?
```

```
 1              DEFENDANT LOBO:  Perfectly.  I am hearing you
 2      perfectly.
 3              THE COURT:  Okay.  We are here today in court and I'm
 4      the judge, Judge Simonton.  Mr. Walter Norkin is here on behalf
 5      of the Government of the United States, and Mr. Louis Casuso is
 6      here representing -- as your attorney, and he also represents
 7      Mr. Sergio Mejia-Duarte in another case.  Okay.  Do you
 8      understand?
 9              DEFENDANT LOBO:  Yes, I understand perfectly.  Your
10      Honor, I have absolutely no problem with that.
11              THE COURT:  Okay.  What I -- the purpose of the hearing
12      today is to determine whether Mr. Casuso can represent both
13      Mr. Mejia-Duarte and Mr. Lobo at the same time.  So what I'd
14      like to do at the beginning is have Mr. Mejia-Duarte state your
15      name and age for the record.  No, no.  Mr. Mejia-Duarte.
16              DEFENDANT MEJIA-DUARTE:  (Through Spanish Interpreter)
17      Sergio Neftali Mejia-Duarte, 40 years old.
18              THE COURT:  And Mr. Lobo, will you state your name and
19      age for the record.
20              DEFENDANT LOBO:  Carlos Arnoldo Lobo, 42 years old.
21              THE COURT:  Thank you.  We also have here an attorney
22      from the Office of the Public Defender, I believe Mr. Cohen.
23      Can you come forward and announce your appearance please?
24              MR. COHEN:  Good afternoon Your Honor, Eric Cohen,
25      Assistant Federal Public Defender.
```

```
 1          THE COURT:  Okay.  I asked the Office of the Public
 2     Defender to send a representative here today so that
 3     Mr. Mejia-Duarte would have somebody present who he could talk
 4     to independently about any decision to waive conflict-free
 5     counsel, and I did that after reviewing the Pretrial Services
 6     Report for Mr. Mejia-Duarte and determining that it was likely
 7     that he would qualify for the appointment of counsel if paid for
 8     by the Court, if Mr. Casuso was disqualified.
 9          So let me begin with you, Mr. Casuso.  If you can tell
10     me what the posture of the case is at the present time.
11          MR. CASUSO:  We're working very hard toward a
12     resolution of the case, Judge.
13          THE COURT:  Okay.  One of the concerns that I have that
14     I expressed at the last hearing concerns the trial date in this
15     case because as you know, this case is set to go to trial on
16     January the 8th.  Okay.  I am not going to be involved in any
17     way, shape or form in any decisions to plead guilty or plea
18     agreements or anything of that nature at all.  I'm not permitted
19     to do so and that is strictly a matter between the Defendant and
20     the Government.  But what I want to do is make sure that the
21     Defendant is prepared to go to trial as scheduled on January 8th
22     and I need to also make a determination whether the Defendant,
23     Mr. Mejia-Duarte, as well as Mr. Lobe who is a likely witness,
24     waive their right to have separate and independent counsel.  And
25     in that regard, I believe that Mr. Mejia-Duarte needs to have
```

 1    the ability to talk to an independent attorney, at least here in

 2    court today.

 3          Okay.  It seems to me that as I said before, that in a

 4    trial of this case -- and I am assuming at this point that this

 5    case is proceeding to trial, okay -- that at that trial,

 6    Mr. Casuso would have a conflict in representing both

 7    Mr. Mejia-Duarte, who is a defendant on trial, and Mr. Lobo who

 8    is a witness against him.  But in order to make that

 9    determination, I need to have more information than what is

10    currently in the record in this case.

11          So Mr. Norkin, the first thing that I would like to do

12    is have you explain to me the nature of your case and the

13    respective roles of Mr. Mejia-Duarte and Mr. Lobo from the

14    perspective of the Government.  And you need to be sure you

15    speak into the microphone because that's the only way the

16    interpreter can hear you.  So you can remain seated or you can

17    stand.  And I'll rely on the interpreter to raise her hand if

18    she is not hearing what you're saying.

19          MR. NORKIN:  I'm used to standing so I'll do it this

20    way.

21          Mr. Lobo and Mr. Mejia are both Honduran nationals.  If

22    this case were to proceed to trial, the Government would put on

23    a variety of witnesses showing that Mr. Mejia operated an

24    organization in Honduras that was in charge of receiving

25    cocaine, and a receiver is actually a term of art in the drug

1   business.  It's different, for example, than a source of supply;

2   it's different than an investor or a buyer of cocaine.

3       But what the evidence will show through the testimony

4   of witnesses is that people in Honduras, Guatemala or Mexico who

5   wanted to purchase cocaine from Colombian suppliers would make

6   arrangements to have the cocaine shipped from Colombia to

7   Honduras, and they would contract with Mr. Mejia and his

8   organization to literally receive the cocaine as it was coming

9   to Honduras.  So Mr. Mejia's role and that of his organization

10  would be to arrange the logistics for how the cocaine actually

11  came onshore in Honduras, and then got from his organization to

12  the next point, either the people who had solicited the cocaine

13  or who were going to buy it in Honduras or Guatemala or Mexico.

14      So to distinguish Mr. Lobo, was not a transporter like

15  Mr. Mejia, Mr. Lobo was someone who was more of an investor.  He

16  had an organization that would work for him as well, but he

17  wasn't -- his organization didn't specifically handle receipt.

18  He was often -- his organization was often the one that took the

19  cocaine after it had been received in Honduras, and that's why

20  the Government said in the motion that he would be a likely

21  witness, because he and other people that he knew about the

22  hiring of Mr. Mejia and his organization.

23      THE COURT:  You said he and others he knew --

24      MR. NORKIN:  Mr. lobo and others in his organization,

25  those that he knew, because Mr. lobo did not act alone --

```
1          THE COURT:  right.
2          Mr. NORKIN:  -- would be witnesses against Mr. mejia --
3   I'm sorry, yes.  Would be witnesses against Mr. Mejia, because
4   Mr. Lobo and people in his organization would know about the
5   hiring of Mr. Mejia things that Mr. Mejia's organization had
6   done to receive the cocaine.  So that's the relationship between
7   the two Defendants and why there may be a potential conflict.
8          I want to add two other things, if I may.  One is just
9   a point of order that I've been told Mr. Lobo is only available
10  until 4:00 today.  Just a point of reference.
11         And the second thing that's probably more relevant for
12  the hearing here today, the Government's understanding of the
13  conflict is as follows:  Mr. Lobo is someone who is seeking to
14  cooperate.  So anything that leads to Mr. Mejia's conviction is
15  something that would be to Mr. Lobo's credit.  Obviously if Mr.
16  Lobo were to testify at trial, that gives him credit.  But
17  there's also the less obvious point that if Mr. Mejia pleads
18  guilty knowing that Mr. Lobo could be a witness against him, Mr.
19  Lobo would also get credit in that circumstance.  And so there
20  is a potential danger as far as the advice that Mr. Mejia might
21  receive because it could be argued that consultation to plead
22  may be for the benefit more of Mr. Lobo than Mr. Mejia.
23         By the same token, Mr. Lobo is not without some danger
24  because it's possible that Mr. Mejia may decide to cooperate,
25  and it's possible that Mr. Mejia will talk about things that
```

1   include Mr. Lobo, and it may be things that the Government is

2   not yet aware of or things that are different from what Mr. Lobo

3   might have told the Government and in that way, it's possible

4   that Mr. Mejia would get a benefit, and then Mr. Lobo would be

5   harmed because the Government would view that negatively, the

6   fact that Mr. Lobo hadn't told the Government certain things.

7            THE COURT:   Now, I want to clarify just one thing that

8   I might have misheard.   Okay.   You said that if Mr. Lobo

9   cooperates and it leads to Mr. Mejia's conviction, he would get

10  credit.   But I assume what you mean is that if he cooperates

11  with the Government by testifying truthfully he might get credit

12  even if Mr. Mejia is acquitted.

13           MR. NORKIN:   That's correct.   My point was more to

14  clarify that the credit is not just for testifying, and I

15  apologize for not emphasizing that yes, it has to be truthful

16  testimony.   That is --

17           THE COURT:   Doesn't have to result in a conviction.

18  Because I'm sure you wouldn't want to provide that incentive to

19  testify falsely to ensure a conviction.

20           MR. NORKIN:   That's correct.   That's a good catch,

21  Judge.   I apologize for misspeaking.

22           THE COURT:   I assume it's because you're assuming a

23  conviction that -- you said that, which sometimes the

24  Government's assumption is right and sometimes it isn't.

25           MR. NORKIN:   That's right.

1       THE COURT:  Okay.  You can continue.

2       MR. NORKIN:  That was basically all that I wanted to

3  say.  I think the testimony by Mr. Lobo is kind of the more

4  obvious thing, but there is -- but there's the concern for any

5  kind of resolution that ends in a conviction.

6       THE COURT:  Okay.  And quite frankly, that had occurred

7  to me, which was one of the reasons that I wanted to have a

8  representative from the Public Defender's Office here and

9  available to consult with Mr. Mejia, because I think that this

10  is a very difficult case with respect to whether the Court would

11  permit a waiver, and I think it's important that Mr. Mejia, who

12  is the defendant on trial here, have the ability to consult with

13  independent counsel.

14       MR. NORKIN:  I understand, Your Honor.  The only thing

15  I do want to make clear is the Government is not taking the

16  position that it's not a waivable conflict nor is it seeking

17  Mr. Casuso's removal.  The reality is is that as difficult as

18  the situation might be, it's not unusual in the context of these

19  international narcotics cases, which is a little bit of a niche

20  practice for lawyers, to have an attorney with conflicts like

21  these and people have waived in the past and things have worked

22  out.  Thank you.

23       THE COURT:  Okay.  And my concern is that if the case

24  goes to trial and Mr. Casuso is cross-examining his former

25  client, there may become an insurmountable conflict at that

1    point in the middle of trial.  And what I have seen happen,

2    sometimes to avoid that, is sometimes a second attorney is

3    brought into a case for purposes of cross-examining the

4    conflicting witness, and sometimes to ensure that the waiver is

5    truly knowing and voluntary there is another attorney appointed,

6    at least for a period of time for the Defendant to consult with.

7            MR. NORKIN:  I understand, Your Honor, and certainly

8    the Government's position as far as this being a waivable

9    conflict is the position at this moment where it appears that

10    the case is going to be resolved.  And I know it's hard to

11    predict, and I understand Your Honor's position that two weeks

12    before trial when plea negotiations break down is not the time

13    to resolve this.  So I appreciate the precautions you're taking.

14            THE COURT:  And what is the Government's position given

15    the present posture of this case where the case is set for trial

16    January 8th?  Because we are now in a trial posture.  Whatever

17    may happen in the future may happen, but I'm not getting

18    involved in that.  It's not my decision or my call in any way,

19    shape or form, I'm not encouraging or discouraging a plea.

20            MR. NORKIN:  The Government's position is given that

21    we're more than 30 days before trial and given that the

22    Defendant has a right, you know, to some extent to his counsel,

23    it's not an inalienable right, but it is a right, and the

24    Government is willing to wait a little bit longer because we are

25    optimistic about the plea negotiations.

```
 1                    THE COURT:  Well, and that may be.  So what you're
 2          saying is you think a disqualification determination right now
 3          would be premature?
 4                    MR. NORKIN:  Said much more eloquently and concisely
 5          than me; yes, Judge.
 6                    THE COURT:  Okay.  Now as I understand it, Mr. Lobo
 7          needs to be someplace else at 4?  Is that correct, Mr. Lobo?
 8                    DEFENDANT LOBO:  Correct, correct.
 9                    THE COURT:  Okay.  And I'd like to talk to your case
10          worker or counselor who is there?  Okay.
11                    DEFENDANT LOBO:  Perfect.
12                    THE COURT:  Okay.  And what was your name, ma'am?
13                    DEFENDANT LOBO:  Can you repeat?
14                    THE COURT:  Is the counselor with you at this time or
15          are you alone?
16                    DEFENDANT LOBO:  Yes, yes.  She's here, she's here,
17          she's here.  I'll call her for you.
18                    MS. KIRTON:  Okay.  Hello?
19                    THE COURT:  Hello.  And to whom am I speaking?
20                    MS. KIRTON:  My name is Case Manager Kirton.
21                    THE COURT:  Okay.  Okay.  Ms. Perkins (sic), I did not
22          envision this hearing being completed in the 45 minutes that Mr.
23          Lobo is available.  So if he really needs to leave in seven
24          minutes, then I'm going to have to arrange for another hearing
25          with him.
```

 1          MS. KIRTON:  Okay.  Yeah.  I'm coming from a completely
 2     different unit just to honor the phone call.  All the staff has
 3     gone home for the day.  We usually leave at 4, so I'm doing --
 4     I'm doing them a favor and they said it would be done by 4:00.
 5          How much longer do you anticipate the conference will
 6     be?
 7          THE COURT:  Well, with respect to Mr. Lobo, I can
 8     probably handle -- I mean, I have to give an advice of rights, I
 9     have to make sure that he understands it.  You know, that's
10     going to take at least 15 or 20 minutes.  I can have everybody
11     come back here tomorrow.
12          MS. KIRTON:  Okay.  Because another problem that we're
13     going to run into, 4:00 he has to be on his unit because that's
14     where he's accounted for.  We have an institutional count that
15     goes on at 4:00 as well.
16          THE COURT:  Okay.  That would have been useful
17     information when I set the hearing, but I don't think anybody
18     really -- it really occurred to anybody that there would be that
19     time constraint.
20          MS. KIRTON:  Well, I have the e-mail here and the
21     e-mail -- I guess -- I don't know who -- I didn't even read it,
22     but it says that they would ask the judge to make sure that the
23     call would end at 4:00.
24          THE COURT:  Well, at the beginning of the hearing, he
25     did.  But had I been told that I would only have 45 minutes to

conduct this hearing, I would have said we need to set the
hearing earlier.

MS. KIRTON:  Oh, okay.  Sometime else arranged it.  I'm
just following my supervisor's request.

THE COURT:  Okay.  So what is -- Mr. Norkin, what is
your availability for tomorrow morning at 9 or 10?

MR. NORKIN:  I'm available.

THE COURT:  Mr. Casuso?

MR. CASUSO:  Yes, Judge, I'm available.  But Judge, may
I say something?

THE COURT:  Yes.

MR. CASUSO:  Okay.  With regards to Mr. Lobo, because I
hate to inconvenience him, okay.  I sent them a waiver in
Spanish and he said he read it, he signed it, I think he's going
to tell you that he doesn't have a problem.  I'm sure that you
may want to explain to him the waiver, but the waiver is the
standard one we have in court here and I sent it to him in
Spanish.  He said he signed it and he sent it back to me,
although I haven't received it.  So, you know, just for your
information that he has no problem in me representing Mr. Mejia
but --

THE COURT:  Yeah, and I appreciate that and understand
that, but I still need to talk to him.  And I can do it in an
abbreviated or quick manner because I think his concerns aren't
identical to those of Mr. Lobo.  I mean, Mr. Mejia.

1          MR. CASUSO:  Well, what maybe you can do it now in an

2    abbreviated form and then we can bring Mr. Mejia back tomorrow.

3          THE COURT:  Well, Mr. Mejia can stay.

4          MR. CASUSO:  Oh, you're right.  Yeah.  You are right,

5    yeah.  Okay.

6          THE COURT:  Well, let me see if I can get -- if I can

7    get through this, and what I want to do is make sure that each

8    of you understand your Constitutional rights.

9          And are you hearing the interpreter, Mr. Lobo?

10         MS. KIRTON:  No, I was still on the line listening to

11   you.

12         THE COURT:  Okay.  Okay.  And that's part of our

13   problem is that because there's no interpreter there and I need

14   -- that we can't -- we can't do this through a simultaneous

15   translation, so the first 45 minutes should have only taken 20

16   minutes.  So it's a difficult situation.  And --

17         MR. CASUSO:  Judge, do you want to continue it until

18   tomorrow and let him go?

19         THE COURT:  Yeah.  I mean, it's 4:00 now, so what I'm

20   going to do is I will continue this until 9:30 a.m. tomorrow

21   morning and --

22         MR. NORKIN:  Judge, can you ask Ms. Perkins if that's a

23   time that works to get Mr. Lobo on the line?

24         THE COURT:  Is that a time when he can be available,

25   Ms. Perkins?

```
1              MS. KIRTON:  It's Kirton, not Perkins.

2              THE COURT:  I'm sorry.  Can you spell that for me?

3              MS. KIRTON:  K-I-R, T as in Tom, O-N.

4              THE COURT:  I apologize, Ms. Kirton.

5              MS. KIRTON:  No problem.

6              THE COURT:  Okay.  So I need him to be here.  I agreed

7     not to have him transported here physically because I don't

8     think that's required, but I need to talk to him for about 20

9     minutes.

10             MS. KIRTON:  I don't have -- the only issue we have

11    here is like I said, I'm not responsible for him.  He's under

12    someone else's supervision, so I don't want to go ahead confirm

13    or give the consent and then tomorrow comes and there's an

14    issue.  Do you understand, Your Honor?

15             MR. NORKIN:  May I recommend that maybe we set it for a

16    little bit later and that will give me time to talk to folks at

17    BOP to see --

18             MS. KIRTON:  Yes, to reach out to the unit manager or

19    the case manager so they can confirm, because I don't want to do

20    that.

21             MR. NORKIN:  Yeah, like 10:30, if that's possible.

22             THE COURT:  Okay.  I'll set it for him for 10:30

23    tomorrow morning.

24             MS. KIRTON:  Okay.

25             THE COURT:  And we will need to make arrangements to
```

1    have him available for about 30 minutes at 10:30 tomorrow

2    morning.

3             MS. KIRTON:  Okay.  I will pass it on to the unit

4    manager, your request.

5             THE COURT:  Okay.  And tell her it's an order as

6    opposed to a request; that the Court has ordered that he be

7    available at 10:30 tomorrow morning.

8             MS. KIRTON:  Okay.

9             THE COURT:  And that may sway some reluctance.

10            MR. CASUSO:  They're from New York, Judge, so they

11   don't sway easily.

12            THE COURT:  Well, whatever.  And if he isn't, I'll just

13   issue an order to show cause why the warden shouldn't be held in

14   contempt.  But -- just kidding.

15            MS. KIRTON:  But I will pass it on to the unit manager.

16            THE COURT:  Okay.  And you can tell her that we had

17   difficulties because of the translation slowing things down,

18   that I wasn't advised that he had to leave at 4 until after the

19   hearing started this afternoon, and I think that should cover

20   things.

21            MS. KIRTON:  Okay.

22            THE COURT:  So now I'm going to talk to Mr. Lobo.  If

23   you can give him the phone and tell him what's going on.

24            MS. KIRTON:  Okay.  Okay.  Mr. Lobo?

25            DEFENDANT LOBO:  I'm right here, and I'm listening.

```
 1              THE COURT:  Okay.  Because you have to be returned back
 2    to your unit at 4, I'm going to need to bring you back tomorrow
 3    morning.  And so in the meantime, I want you to consider your
 4    waiver of your right to conflict-free counsel, and I want you to
 5    consider whether you're willing to waive your right to permit
 6    Mr. Casuso to cross-examine you if there is a trial in this
 7    case, as well as whether you're willing to waive it in the event
 8    there is a plea of guilty by Mr. Mejia in this case.
 9              Do you understand?
10              DEFENDANT LOBO:  Perfect.  I understand perfectly.
11    There's no issues.
12              THE COURT:  When you say there's no issues, what do you
13    mean?
14              DEFENDANT LOBO:  That I agree that I have no issues in
15    regards to Mr. Casuso defending the interests of the gentleman.
16              THE COURT:  And by gentleman, you mean Mr. Mejia?
17              DEFENDANT LOBO:  Correct.
18              THE COURT:  Okay.  Thank you.
19              I will let you be returned to your unit now.  Thank
20    you.
21              DEFENDANT LOBO:  Okay.  Thank you.
22              THE COURT:  Okay.  So what I want to ask you now,
23    Mr. Mejia, is if I decide that Mr. Casuso is disqualified based
24    on an unwaivable conflict, are you able to afford your own
25    attorney or would you want me to appoint one for you?  And I'm
```

1    not suggesting that I am going to disqualify him, I just want to

2    know what your position is on that.

3              DEFENDANT MEJIA-DUARTE:  At this time, I only count on

4    Attorney Casuso at the present time for this case.

5              THE COURT:  Okay.  Okay.  Because based upon my review

6    of the Pretrial Services Report, and because I think that it is

7    important for you to be able to consult with an independent

8    attorney in making your waiver decision, I'm going to appoint

9    the Office of the Public Defender to represent you for purposes

10   of determining whether you want to waive your right to counsel.

11   You don't have to say anything to them if you don't want to say

12   anything to them, but I want to make sure that you have the

13   opportunity to talk to somebody who is independent of Mr. Casuso

14   because this is an important decision; and also because as the

15   Government has pointed out, Mr. Casuso has a potential conflict

16   even if you plead guilty, as well as what is a likely conflict

17   if you go to trial and Mr. Lobo testifies as a witness against

18   you.  And I also want to make sure that you don't feel

19   unnecessarily rushed in making a decision regarding whether

20   you're going to plead guilty, and I want to make sure that

21   that's clear to you because it's an important decision and it's

22   -- you know, it's one that deserves careful consideration.  And

23   the only reason I say that is that I don't want you to feel that

24   you are being pressured to make that decision.

25              On the other hand, this case is set for trial January

20

8th.  It is possible that Chief Judge Moore will continue it if necessary, but his general practice, which I'm sure your attorney can tell you, is that he doesn't continue cases in most instances.  He tends to stick to his trial schedule.  But again, that may not be the case, you know, here.  I don't know.  I don't know what your reasons for a continuance would be, and so I need to make sure that you're ready to go to trial on January 8th.  Do you understand?

DEFENDANT MEJIA-DUARTE:  Perfectly.

THE COURT:  So what I would like to do at this point is go through the waiver colloquy with him, Mr. Casuso, and review it with Mr. Mejia and give him -- make sure he understands everything.  I'll take a brief recess.  I don't know -- Mr. Cohen, do you speak Spanish or do you need the aid of the interpreter?

MR. COHEN:  I would need the interpreter, Your Honor.

THE COURT:  Okay.  And I also want him to be able to consult with Mr. Cohen.  And Mr. Casuso, since you're in the case, you can be part of that consultation if necessary or he can have a moment to speak to him independently.  I don't know how you would prefer to proceed, Mr. Casuso.

MR. CASUSO:  Sure, Judge.

THE COURT:  What does that mean?

MR. CASUSO:  Whatever you want to do, that's fine.  You know, Mr. Cohen is here, he can speak to him.  I have no

21

```
1    problem, you know.  You can --

2              THE COURT:  It's for your protection as well, yes.

3              MR. CASUSO:  I understand that, Judge, but okay.

4              THE COURT:  So Mr. Cohen, what would you suggest?

5              MR. COHEN:  Your Honor, my preference would be to speak

6    with Mr. Mejia privately if that's what he would like to do so

7    that there's no claim of any coercive effect of Mr. Casuso being

8    present during a conversation.

9              THE COURT:  Okay.  And I'll give Mr. Casuso a chance to

10   talk to him for a minute about that.  Okay.

11             So I think what I'm going to do -- what I'm going to do

12   now is place you under oath and I'm going to give you certain

13   advice of rights.  I'm not going to ask you to waive them until

14   you have a chance to talk to Mr. Cohen, but I do want to go

15   through them with you, and so I'm going to place you under oath

16   first.

17             Would you please raise your right hand?  Do you

18   solemnly swear or affirm that the testimony you're about to give

19   will be the truth, the whole truth and nothing but the truth?

20             DEFENDANT MEJIA-DUARTE:  Yes, that's right.

21             THE COURT:  Thank you.  You can be seated.

22             Okay.  How far did you go in school?

23             DEFENDANT MEJIA-DUARTE:  High school.

24             THE COURT:  And are you able to understand the

25   interpreter and is your translation equipment working properly?
```

```
 1              DEFENDANT MEJIA-DUARTE:  Yes.

 2              THE COURT:  Okay.  Okay.  Have you taken any drugs,

 3    medicine or pills or drunk any alcoholic beverages during the

 4    last 24 hours?

 5              DEFENDANT MEJIA-DUARTE:  Last night I took a pill.

 6    It's a pill -- it's a vitamin, it's calcium, it's calcium for

 7    the bones.

 8              THE COURT:  Okay.  Is there anything about that that

 9    would affect your ability to understand these proceedings?

10              DEFENDANT MEJIA-DUARTE:  No.

11              THE COURT:  Okay.  It's a good thing because I took

12    calcium also and if there's a problem with it, I need to know.

13              DEFENDANT MEJIA-DUARTE:  No, we're fine.  I have a

14    little (unintelligible) that I'm taking.

15              THE COURT:  Okay.  Do you understand what's happening

16    today?

17              DEFENDANT MEJIA-DUARTE:  Yes.

18              THE COURT:  Okay.  Is there any reason to doubt his

19    competence at this time, Mr. Casuso?

20              MR. CASUSO:  No, Your Honor.

21              THE COURT:  Mr. Norkin?

22              MR. NORKIN:  No, Your Honor.

23              THE COURT:  Okay.  Okay.  I want to make sure that you

24    understand the seriousness of the charges that have been brought

25    against you in this case.  You have been charged in an
```

1    indictment that alleges that beginning at least as early as in

2    and around 2006 and continuing through June of 2014 in

3    Guatemala, Honduras and elsewhere, you conspired to distribute a

4    controlled substance intending that it would be unlawfully

5    imported into the United States and the controlled substance is

6    five kilograms or more of cocaine.  The maximum potential

7    sentence for this offense is life imprisonment, and there is

8    also a mandatory minimum, I believe, of 10 years.

9            Is that correct, Mr. Norkin?

10           MR. NORKIN:  Yes, Your Honor.

11           THE COURT:  As well as other potential penalties,

12   including a fine of up to $10 million and forfeiture and a

13   special assessment that's mandatory of $100.

14           Do you understand the seriousness of these offenses and

15   your potential maximum sentence?

16           DEFENDANT MEJIA-DUARTE:  Yeah, yeah.  It's true, yes.

17           THE COURT:  Okay.  So you do understand the seriousness

18   of it?

19           DEFENDANT MEJIA-DUARTE:  Yes.

20           THE COURT:  Okay.  Now, if at any time you don't

21   understand something or you have a question, I will let you

22   consult with either your lawyer Mr. Casuso, or Mr. Cohen, and

23   you can ask them questions or you can ask me any questions.  But

24   it's important that you understand what I'm saying.

25           Do you understand?

```
 1              DEFENDANT MEJIA-DUARTE:  Yes.
 2              THE COURT:  In addition, this proceeding can be
 3    continued to another day if you wish to consult in more depth
 4    with Mr. Cohen, or you wish to consult with another attorney or
 5    you just need more time to think about it.  Do you understand?
 6              DEFENDANT MEJIA-DUARTE:  Today's proceeding?
 7              THE COURT:  Yes.
 8              DEFENDANT MEJIA-DUARTE:  I understand it.
 9              THE COURT:  Okay.  I'm going to advise you of your
10    rights.  The United States Constitution gives every defendant
11    the right to the effective assistance of counsel, and when one
12    lawyer represents two or more defendants either in the same case
13    or who are involved allegedly in the same conspiracy, the lawyer
14    may have trouble representing both of them with the same
15    fairness, and this is a conflict of interest that denies the
16    defendant the effective assistance of counsel.  Such conflicts
17    are always a potential problem because different defendants may
18    have different degrees of involvement, and each defendant has
19    the right to a lawyer who represents only him or her.  So in
20    this case, you have the right to an independent lawyer who is
21    looking out only for your best interest and has no interest in
22    any other person involved in the criminal activities that are
23    the subject of the indictment.  And Mr. Lobo also has the same
24    right, but today at this time I'm concerned with you and your
25    right to an independent lawyer who represents only him, only
```

1    you.  And there are various ways that this dual representation

2    can work to your disadvantage, and I'm just going to give you

3    examples.

4         It may inhibit or prevent counsel from conducting an

5    independent investigation in support of your case.  For example,

6    the attorney-client privilege could prevent your lawyer from

7    communicating to you information that he gathered from another

8    defendant such as Mr. Lobo.

9         In addition, the Government may offer either immunity

10   or offer to recommend a lesser sentence to one defendant for

11   cooperating with the Government.  And in this case, Mr. Lobo has

12   already been convicted -- and I neglected to ask Mr. Norkin, was

13   Mr. Lobo convicted of the same conspiracy offense that's charged

14   in this indictment?

15        MR. NORKIN:  Yes, Your Honor.

16        THE COURT:  Okay.  So Mr. Lobo is seeking a lesser

17   sentence, and if you were to receive -- or he may receive a

18   lesser sentence for cooperating against you and should you

19   receive an offer to cooperate with the Government, your lawyer

20   needs to advise you whether or not to accept it.  But if your

21   lawyer advises you to accept the offer, and that's what

22   Mr. Norkin was saying, it could harm the case potentially of Mr.

23   Lobo and his ability to get a reduced sentence.

24        In addition, if Mr. Lobo assists the Government by

25   testifying against you, your lawyer may not be able to

1    effectively cross-examine him at trial because he's not allowed

2    to take a position that is against the interest of Mr. Lobo.

3    And in order to help your case, your lawyer ought to be able to

4    cross-examine the witness against you vigorously and try to

5    prove that they're not being truthful, and so your lawyer has an

6    inherent conflict in terms of representing you and representing

7    Mr. Lobo at the same time because what he does to help you may

8    hurt Mr. Lobo, and what he does to help Mr. Lobo may hurt you.

9    And that's the case even though Mr. Lobo has already been

10   convicted and sentenced, because he's trying to get a reduced

11   sentence based upon cooperating with the Government.  And so

12   it's -- there is an inherent conflict.

13           And in terms of negotiating your guilty plea, your

14   lawyer may have an incentive to convince you to plead guilty

15   because as Mr. Norkin said, since the identity of Mr. Lobo as a

16   witness may have influenced your decision, Mr. Lobo may get some

17   credit for that as well.

18           In addition, in this case, you know, your lawyer at

19   sentencing may wish to say that, you know, you aren't as

20   culpable as Mr. Lobo, or place some blame on Mr. Lobo for his

21   role in things, and he really would have a difficult time doing

22   that because it would be adverse to Mr. Lobo's interests.

23           And another thing is that evidence that may help you

24   could hurt Mr. Lobo.  And the Government alluded to this when it

25   explained that you may have information about Mr. Lobo that is

1    different than what Mr. Lobo has told the Government, and that

2    may demonstrate that Mr. Lobo wasn't truthful and that could

3    hurt Mr. Lobo in obtaining a reduced sentence.  And simply, Mr.

4    Lobo may have information about you that you wish to challenge

5    and that puts your attorney in a very difficult position at

6    sentencing and in terms of what, if any, positions the

7    Government might take regarding your sentencing.

8            And so this dual representation problem exists both

9    before a trial and after a trial with respect to both you and

10   Mr. Lobo.

11           Do you understand that?

12           DEFENDANT MEJIA-DUARTE:  Yes.

13           THE COURT:  Okay.  And what I would like to do at this

14   point is just take a brief recess.  I'd like for you to talk to

15   Mr. Cohen, and you can either go -- either Mr. Casuso, you can

16   step outside and he can talk to him here at the table, I don't

17   know what the marshal situation is, or you can go over to the

18   jury box with Mr. Mejia and talk to him there with an

19   interpreter.  And then when you're finished, you can come back

20   and you can tell me whether you believe you need additional time

21   to talk to him over at FDC, in which case I can bring him back,

22   you know, later on.  If it's next week, I would be bringing him

23   back early in the morning because I'm on criminal duty, or late

24   in the afternoon, but, you know, I'll make arrangements.  The

25   following week I have a jury trial so I have a scheduling -- I

1   have scheduling issues, but I will make sure that I can

2   accommodate Mr. Mejia's need for additional time.

3           And in any event, the Government has suggested it may

4   be premature to make a decision at this point and it may be, I

5   don't know, but I need to move along to the extent that I can.

6   So I'll give you a chance to talk to him, and what I want you to

7   consider and what I'm going to be asking you to tell me,

8   Mr. Mejia, is why it is you want Mr. Casuso to represent you

9   instead of having a different attorney who doesn't have any

10  interests that are against you or in conflict with you, or that

11  could be in conflict with you.

12          So I'll just take a brief recess.  Mr. Cohen, is there

13  anything else you think I need to do?

14          MR. COHEN:  Not at this point, Your Honor.

15          THE COURT:  Okay.  Mr. Casuso, is there anything else

16  you think I need to do?

17          MR. CASUSO:  No, Judge.

18          THE COURT:  Mr. Norkin?

19          MR. NORKIN:  No, Your Honor.

20          THE COURT:  Okay.  So just -- I'll give you a few

21  minutes and if it's -- you need more time, you know, then you

22  can ask for that.

23          MR. COHEN:  Thank you, Your Honor.

24          THE COURT:  Thank you.

25          COURTROOM DEPUTY:  All rise.

```
 1              Good afternoon.  Please be seated.  Okay.
 2              Mr. Cohen, did you have an adequate opportunity to
 3    speak with Mr. Mejia?
 4              MR. COHEN:  We have.
 5              THE COURT:  And do you need any additional time?
 6              MR. COHEN:  I asked Mr. Mejia if he wanted additional
 7    time to speak with me, either here or at FDC.  He indicated that
 8    he understood what I explained to him, so I don't believe so,
 9    but I guess the Court could ask him to confirm.
10              THE COURT:  Well, I just wanted to get your opinion on
11    whether you believed that you needed additional time because if
12    you came to me and said yes, I need additional time, I would say
13    okay, fine.
14              MR. COHEN:  No, I don't need any additional time.
15              THE COURT:  And then --
16              MR. COHEN:  The Court's question.
17              THE COURT:  Okay.  Mr. Mejia, have you -- is your
18    translation equipment working properly, first of all?
19              DEFENDANT MEJIA-DUARTE:  Yes.  I was just turning up
20    the volume.
21              THE COURT:  Okay.  Good.
22              Mr. Mejia, have you had an adequate opportunity to talk
23    to Mr. Cohen, who I appointed to consult with you?
24              DEFENDANT MEJIA-DUARTE:  Yes.
25              THE COURT:  Okay.  And do you want any additional time
```

1    to either talk to him or consider what you want to do in terms

2    of waiving your right to a conflict-free counsel?

3        DEFENDANT MEJIA-DUARTE:  Repeat the question, please.

4        THE COURT:  Okay.  Have you had enough time to talk

5    with him or do you want additional time?

6        DEFENDANT MEJIA-DUARTE:  Oh no, no.  I did.  I did have

7    enough time.

8        THE COURT:  Okay.  And do you understand your right to

9    conflict-free counsel?

10        DEFENDANT MEJIA-DUARTE:  The lawyer explained it to me.

11        THE COURT:  Okay.  And did you understand it?

12        DEFENDANT MEJIA-DUARTE:  Yes.

13        THE COURT:  And do you -- at this time, do you still

14    want Mr. Casuso to represent you in this case?

15        DEFENDANT MEJIA-DUARTE:  Yes.

16        THE COURT:  Can you explain to me your understanding of

17    the possible conflict that he has in representing both you and

18    Mr. Lobo?

19        DEFENDANT MEJIA-DUARTE:  Could you repeat that, please?

20        THE COURT:  Okay.  Earlier in the proceeding, I

21    explained to you the type of conflict that Mr. Casuso has.

22        DEFENDANT MEJIA-DUARTE:  Yes.

23        THE COURT:  That if the case were to go to trial, he

24    cannot reveal the confidences of Mr. Lobo and so he cannot

25    cross-examine Mr. Lobo.

```
1              DEFENDANT MEJIA-DUARTE:  I understand.

2              THE COURT:  And as effectively as he might otherwise be

3       able to do.

4              In addition, he can't use Mr. Lobo's confidential

5       information to follow investigative leads in your case.  In

6       other words, he has to maintain that confidence.

7              And in addition, he can't effectively cross-examine Mr.

8       Lobo because he would be acting against the interests of his

9       current client by trying to cast doubt on the accuracy of what

10      Mr. Lobo is saying.

11             Do you understand that?

12             DEFENDANT MEJIA-DUARTE:  Yes.

13             THE COURT:  And in addition, in terms of negotiating

14      with the Government over a potential sentence, he would be

15      hampered, he would be -- you know, in his ability to argue that

16      you should be permitted to cooperate against Mr. Lobo, or that

17      the Government should disregard information that Mr. Lobo has

18      given the Government, and so an independent attorney might be

19      able to get a better deal for you if you could cooperate against

20      Mr. Lobo or show that Mr. Lobo was more involved than what Mr.

21      Lobo has said or various other matters because he has a divided

22      loyalty.

23             Do you understand that?

24             DEFENDANT MEJIA-DUARTE:  I understand.

25             THE COURT:  Okay.  So now what I wanted to do was have
```

1    you explain to me why you want Mr. Casuso to continue to

2    represent you despite these and the other conflicts that I

3    explained to you.

4           DEFENDANT MEJIA-DUARTE:  I know that he is a good

5    lawyer, my family recommended him to me.

6           THE COURT:  Okay.  And --

7           DEFENDANT MEJIA-DUARTE:  And it's hard to speak just

8    one phrase at a time.

9           THE COURT:  I know, but we need to accommodate the

10   needs of the interpreter.

11          And how long has Mr. Casuso represented you?

12          DEFENDANT MEJIA-DUARTE:  Three months.

13          THE COURT:  Did he represent you before you returned or

14   before you came to the United States?

15          DEFENDANT MEJIA-DUARTE:  Yes.  It's been three months

16   since I have been in prison.

17          THE COURT:  Okay.  And now I want to make sure that you

18   understand what the conflict is and what he won't be able to do

19   because of that conflict.  And so if you will just repeat back

20   to me what I've told you in your own words, and explain to me

21   your understanding of his conflict or his potential conflict.

22          DEFENDANT MEJIA-DUARTE:  I have understood the

23   conflict, but I feel that there's no problem for me because I

24   don't know Mr. Lobo.

25          THE COURT:  Do you understand that if you were to go to

1    trial and Mr. Lobo were to testify that he did know you or your

2    organization, that Mr. Casuso would be not be able to

3    effectively cross-examine him regarding that?

4              DEFENDANT MEJIA-DUARTE:  I am sure that he doesn't know

5    me either.

6              THE COURT:  Okay.  Let me ask you, Mr. Norkin, do you

7    expect that Mr. Lobo will testify that he knows Mr. Mejia?

8              MR. NORKIN:  This is an issue that is sometimes

9    challenging for people who are not familiar with the US legal

10   system, and it has to do with the operation of our conspiracy

11   laws.

12             THE COURT:  Well, what I'm saying is he says will Mr.

13   Lobo identify Mr. Mejia in the courtroom as somebody who he

14   knows personally.

15             MR. NORKIN:  Mr. Lobo will talk about the fact that he

16   is aware, based on negotiations he did in the drug world, that

17   he was obtaining drugs in Honduras that were received by

18   Mr. Mejia's organization.  This is why I reference the

19   conspiracy.  It's not a matter of identifying and having

20   face-to-face conversation.  Mr. Lobo is aware of who Mr. Mejia

21   is, he is aware of what the organization is, he is aware of the

22   connections, that they have mutual co-conspirators in common,

23   and that would be the testimony.

24             THE COURT:  Okay.  So do you understand that if you

25   were to go to trial, that is the testimony the Government would

1     expect that Mr. Lobo would give?

2              DEFENDANT MEJIA-DUARTE:  I understand.

3              THE COURT:  Okay.  And do you understand how this could

4     present a conflict for your attorney?

5              DEFENDANT MEJIA-DUARTE:  I believe in the truth and the

6     lawyer will defend me.

7              THE COURT:  Okay.  And what I want to tell you is that

8     your lawyer cannot cast Mr. Lobo as someone who is not telling

9     the truth.  He can't challenge that testimony effectively

10    because he can't ask questions that would make Mr. Lobo look

11    like a liar.  Do you understand that?

12             DEFENDANT MEJIA-DUARTE:  Yes, but it seems to me that

13    that is a matter for the lawyer.

14             THE COURT:  Okay.  Mr. Casuso, have you explained this

15    to your client?

16             MR. CASUSO:  Yes, Your Honor.

17             THE COURT:  Okay.  And are you satisfied that he

18    understands that you would be inhibited to some degree in your

19    cross-examination of Mr. Lobo, if not entirely?

20             MR. CASUSO:  Yes, Your Honor.

21             THE COURT:  Okay.  If this case goes to trial, would

22    you be intending to be the one who would cross-examine Mr. Lobo?

23             MR. CASUSO:  No, Your Honor.

24             THE COURT:  Okay.  So what would you -- what would you

25    do in that instance?

1          MR. CASUSO:  Judge, if it goes to trial, what I suggest

2     is that we talk about that, if we decide to do that.  Okay?  I'm

3     not sure we're there yet.

4          THE COURT:  Okay.

5          MR. CASUSO:  As I said, we're working very hard to --

6          THE COURT:  No, I understand that, and I'm not going to

7     issue an order on disqualification now or the waiver today.  But

8     what I want to know is assuming it were to go to trial, would

9     you be -- because he's waiving all of his rights at this point.

10    Whether I accept it is a different issue.

11         MR. CASUSO:  Okay.  Judge --

12         THE COURT:  What would be your plan if it goes to

13    trial?

14         MR. CASUSO:  Okay.  Of course before I came here, I

15    spoke to Mr. Lobo.

16         THE COURT:  Yes.

17         MR. CASUSO:  I have no problem with anything that Lobo

18    has to say about this man.  I spoke to him and I explained the

19    conflict, because Mr. Lobe is someone who is very well-known in

20    his country.  He was almost like kind of like a rock star.

21    Before he got brought here, the publicity, he was on television

22    as a result of his capture.  Everybody knows Carlos Lobo in

23    Honduras.  So and -- he and I -- I represented him.  I have no

24    problem, Judge, whether Mr. Lobo has told the truth to the

25    Government.  He's been cooperating with them, and they like what

1    he has to say.  I asked Mr. Lobo if he had a problem with me

2    representing Mr. Mejia.  Before Mr. Mejia came to this country,

3    I told him who I represented.  Okay.  I spoke to Mr. Lobo, I

4    really have no problem with what Mr. Lobo has to say.

5        And also, Judge, I mean, I don't think that anything

6    this man has to say would contradict Mr. Lobo because he was

7    extradited, they can't charge him with anything else, Judge.

8    They can't open up any more cases on him, that's the law on

9    extradition.  So we'll see, you know.

10       THE COURT:  I know, but my --

11       MR. CASUSO:  I don't have a problem, Judge.  Really.  I

12   spoke to Mr. Lobo and I told him what he knew, that sort of

13   thing because, I mean, I don't want to get into a case where I'm

14   going to get kicked out.

15       THE COURT:  Right.

16       MR. CASUSO:  So I asked him.  I don't have a problem

17   with Mr. Lobo, if they want to call him, you know.  But I won't

18   be there to cross-examine him.

19       THE COURT:  Okay.

20       MR. CASUSO:  Okay.  Just so you know.

21       THE COURT:  If you remain in the case, there would be

22   another attorney who would come in for that purpose?

23       MR. CASUSO:  Yes, ma'am.

24       THE COURT:  At least with respect to Mr. Lobo, you

25   would not be conducting the cross-examination?

```
 1              MR. CASUSO:  Absolutely not.

 2              THE COURT:  Whatever else that may mean.

 3              MR. CASUSO:  Right.

 4              THE COURT:  Okay.  Okay.  And now Mr. Mejia, I just

 5    want to make sure, because I'm not sure that you fully

 6    appreciate the conflict at this point that may exist.

 7              With respect to plea negotiations or sentencing

 8    recommendations or sentencing arguments, do you understand that

 9    Mr. Casuso could not do or say anything that would hurt Mr.

10    Lobo?

11              DEFENDANT MEJIA-DUARTE:  Yes.

12              THE COURT:  Okay.  And do you understand what that

13    means?

14              DEFENDANT MEJIA-DUARTE:  Well, as you can see, I don't

15    know the laws, but I have my lawyer, and I know my lawyer.  He's

16    my lawyer and we're going to go as far as this thing takes us.

17              THE COURT:  Okay.  Do you understand that if -- and I'm

18    just going to speak hypothetically.  Do you understand that if

19    you had very good information about something that would hurt

20    Mr. Lobo and the Government would be so interested in this

21    information they would reduce your sentence if you were

22    convicted, that Mr. Casuso would not be able to give that

23    information or assist you in getting credit for giving that

24    information to the Government.

25              DEFENDANT MEJIA-DUARTE:  That's what makes me trust my
```

1    lawyer the most because I have nothing to say about Lobo.  I

2    don't know him.

3              THE COURT:  But assuming you did, and assuming that you

4    found out something, do you understand that your lawyer would

5    have a conflict of interest because he would be bound to protect

6    Mr. Lobo and he would also be bound to protect you.

7              SPANISH INTERPRETER:  Your Honor, may the interpreter

8    ask for a repetition?

9              THE COURT:  Yes.

10             DEFENDANT MEJIA-DUARTE:  Yes, but I feel that that

11   conflict, that's the lawyer's conflict, that's the attorney's

12   conflict.  I don't understand the laws, but the attorney does

13   understand them.

14             THE COURT:  That's true, but the conflict that the

15   attorney has could work against you.  Do you understand that?

16             DEFENDANT MEJIA-DUARTE:  Yes, it's a risk, but it's

17   where we're at.

18             THE COURT:  So you're saying that you understand that

19   there is a risk that your attorney might not be able to do

20   something to help you if it hurts Mr. Lobo; is that correct?

21             DEFENDANT MEJIA-DUARTE:  I trust in Mr. Casuso's

22   professional ethics.

23             THE COURT:  Do you understand that his professional

24   ethics means that he could not help you if it hurts Mr. Lobo.  I

25   am telling you that.  Do you understand that?

1    DEFENDANT MEJIA-DUARTE:  Yes, but I also understand

2  that he's my representative.

3    THE COURT:  Well, he's your representative if I let him

4  stay as your representative.  If I say that you do not

5  understand the potential conflict of interest that he has, or

6  that -- and that you're not capable of waiving it because you

7  don't understand it, or that he has a conflict that the -- that

8  society is not willing to recognize as waivable, then he will no

9  longer be your lawyer.  Do you understand that?

10    DEFENDANT MEJIA-DUARTE:  Yes, I understand.

11    THE COURT:  And what concerns me here is that you don't

12  seem to understand or accept the fact that if there is something

13  that helps you and hurts Mr. Lobo, he will not be able to do it.

14  Because you keep saying I trust in his ethics, and it seems that

15  you're implying that he would represent you and put your

16  interests ahead of the interests of Mr. Lobo.  And that concerns

17  me because under the law, he's not allowed to do that, and that

18  could hurt you.  Do you understand that?

19    DEFENDANT MEJIA-DUARTE:  Yes.

20    THE COURT:  Okay.  Mr. Cohen -- and obviously I do not

21  want to get into any attorney-client confidences so I'm not

22  asking you what was said between you and Mr. Mejia, but are you

23  confident that he understands the potential conflict between --

24  that Mr. Casuso has in representing both him and Mr. Lobo?

25    MR. COHEN:  I was more confident when he and I were

speaking than based on his answers since we came out, but I took

the three separate scenarios available to him in any case:

Trial, straight plea, plea with cooperation.  Explained

potential pitfalls of Mr. Casuso's representation in each.  He

asked some questions, I answered the questions.  I asked if he

had any other questions, he said he did not and that he had

understood what I had told him.

THE COURT:  Okay.  So the short answer to my question

is yes?

MR. COHEN:  Yes.  I'm sorry, Your Honor.

THE COURT:  No, and I appreciate you explaining it but

I just want to make sure that you're confident that he

understands the risks and that it's been discussed with him

privately with independent counsel.

MR. COHEN:  Yes.  Again, we went over each scenario and

potential conflicts and what it can mean to his particular case.

THE COURT:  Okay.  And Mr. Casuso, have you explained

to him the potential conflicts?

MR. CASUSO:  Yes, Judge.

THE COURT:  And are you satisfied that he understands

them?

MR. CASUSO:  Yes, Judge.

THE COURT:  Okay.  And I'm going to ask him again just

so that I understand.  And again, this is just to make sure that

you truly comprehend the potential conflict that Mr. Casuso has

1   in representing both you and Mr. Lobo.  So can you -- and I'll

2   give you a moment, Mr. Casuso, if you want to talk to him again

3   about discussing this, and I want you to be able to tell me your

4   understanding of the potential conflicts because if you don't

5   understand them, you can't really waive them.

6           So I need to satisfy myself that you understand them

7   and that you waive them, and then the fact that nevertheless you

8   still want Mr. Casuso to represent you is something that will

9   carry a lot of weight.

10          So Mr. Casuso, I'll give you a minute and then I'll ask

11  him again.  Do you think that makes sense?

12          MR. CASUSO:  Sure.

13          THE COURT:  Okay.

14          MR. CASUSO:  In private Judge, or do you want me to ask

15  him out loud?

16          THE COURT:  No, in private.  I want a private

17  conversation between the two of you.

18          MR. CASUSO:  Okay.

19          THE COURT:  Yes.

20          MR. CASUSO:  Okay, Judge.

21          THE COURT:  Okay.

22          MR. CASUSO:  You want me to ask him?

23          THE COURT:  Or I can -- I'll just ask him to explain.

24  Okay.  You can put your translation equipment on.  Okay.

25          Mr. Mejia, can you explain to me your understanding of

```
 1        the potential conflict of interest that your attorney has?

 2                  DEFENDANT MEJIA-DUARTE:  To explain it to you?

 3                  THE COURT:  Right.  I want to make sure you understand

 4        it.  So if you can tell me in whatever simple terms you want to

 5        use, it doesn't have to be a complicated explanation of the law,

 6        but I've explained conflicts to you, Mr. Cohen has and

 7        Mr. Casuso has.  But the court of appeals, the court that

 8        reviews what we do here, has said that to really ensure that a

 9        defendant understands what the conflict is, he should be able to

10        explain it to the court and that way everybody knows that you're

11        not simply saying yes, yes, I want to waive; that you really

12        understand what you're waiving.

13                  DEFENDANT MEJIA-DUARTE:  Yes.  What I understand is

14        what has been explained to me and it is that if Lobo has any

15        accusation against me, the attorney will not be able to present

16        that.  And that if Lobo has anything to say against me, the

17        attorney will not be able to refute it.

18                  MR. NORKIN:  I think there was a switch of names in

19        part of the interpretation in the beginning.

20                  SPANISH INTERPRETER:  The interpreter stands corrected.

21        What has been explained to me is if I have an accusation against

22        Mr. Lobo, the attorney will not be able to present it.

23                  THE COURT:  Okay.  And he will not be able to refute

24        information that Mr. Lobo has.

25                  DEFENDANT MEJIA-DUARTE:  I couldn't hear because it was
```

```
1    English.  Okay.  Now I can.
2            THE COURT:  So what I was saying is that -- so what
3    you're saying is that you understand that your attorney wouldn't
4    be able to present information you have against Mr. Lobo or
5    refute information Mr. Lobo has against you.  Okay.
6            DEFENDANT MEJIA-DUARTE:  That's correct.
7            THE COURT:  Okay.  And do you understand that if you go
8    forward with Mr. Casuso and waive your right, that the trial
9    will not be continued to permit you to get additional counsel or
10   a substitute counsel.
11           DEFENDANT MEJIA-DUARTE:  Yes, I understand.
12           THE COURT:  Okay.  Okay.  Mr. Norkin, do you think
13   there is anything else that I need to ask Mr. Mejia at this
14   time?
15           MR. NORKIN:  No, Your Honor.  I was satisfied by his
16   last answer.
17           THE COURT:  Okay.  And Mr. Casuso, has he signed a
18   written waiver form or do you have a written waiver form?  If
19   you don't, I think if you come forward --
20           MR. CASUSO:  Judge, I think I filed it.
21           THE COURT:  When do you think you filed it?
22           MR. CASUSO:  Last week.  I didn't bring one with me,
23   but I did have one signed.
24           THE COURT:  Okay.  Okay.  It's possible that it was
25   filed and that I just didn't -- that I didn't see it filed.  Let
```

1   me -- and of course my computer is very slow.  Maybe my

2   courtroom deputy can pull up the case.

3          MR. CASUSO:  I'll bring you a new one.

4          THE COURT:  That's okay.  We'll either have him sign it

5   here or we'll -- she's checking right now to see the last thing

6   that was docketed because it would have been the last thing and

7   it does not appear to be, judging from the shake of her head.

8   Okay.  We have one right here.

9          MR. CASUSO:  I need one in Spanish.

10          THE COURT:  We do.

11          MR. CASUSO:  Got it?  Okay.

12          THE COURT:  Mr. Casuso, we are prepared.

13          MR. CASUSO:  I know you are, Judge.

14          THE COURT:  There's an English and a Spanish form and

15   we file them as duplicates.  Okay.  If you'll hand it to my

16   courtroom deputy.  Okay.

17          I see that you have been advised of your right to

18   separate counsel and you have waived your right to separate

19   counsel.  I have advised you of the rights that are in the first

20   part of the form, and I believe that Mr. Casuso has read this

21   form to you; is that correct, Mr. Mejia?

22          DEFENDANT MEJIA-DUARTE:  Yes.

23          THE COURT:  And you've signed by the English and the

24   Spanish version?

25          DEFENDANT MEJIA-DUARTE:  Yes.

1    THE COURT:  What I'm going to do is I find that you

2    have knowingly, intelligently and voluntarily waived your right

3    to conflict-free counsel.  I'm not going to enter an order --

4    I'm going to sign it reflecting that it was -- that you were

5    fully advised and that you signed the waiver and it was a

6    knowing, voluntary and intelligent waiver.

7         I'm not going to be entering an order regarding

8    disqualification for two reasons.  One is, I think I want to

9    wait and see what Mr. Lobo says tomorrow morning because my

10   decision could be influenced by what he does, and also I want to

11   just wait and consider the status of the case.  So I will sign

12   it and I'm just letting you know that that's what my signature

13   represents on the waiver form.

14        And so at tomorrow morning's hearing with Mr. Lobo,

15   Mr. Mejia has the right to be present.  Does Mr. Mejia want to

16   be present in court when I question Mr. Lobo, or does he want to

17   waive his right to be present?  And I'll let you talk to

18   Mr. Casuso about that.

19        DEFENDANT MEJIA-DUARTE:  Will I be able to hear the

20   conversation with Lobo?

21        THE COURT:  Yes.

22        DEFENDANT MEJIA-DUARTE:  I'm going to speak to my

23   attorney.

24        THE COURT:  Okay.  And while that's going on, Mr. Cohen

25   --

1    MR. CASUSO:  Bring him back, Judge.

2    THE COURT:  Okay.  Mr. Cohen, is there anything further

3    that you think I need to do with respect to Mr. Mejia-Duarte?

4    MR. COHEN:  I do not, Your Honor.

5    THE COURT:  And do you think in light of your

6    conversations, that you should be here as well in case Mr. Mejia

7    wants to talk to you or --

8    MR. COHEN:  Your Honor, I have a conflict in the

9    morning.  If something arises --

10   THE COURT:  We'll call you.

11   MR. COHEN:  If you're willing to set it over until next

12   week, I'll be glad to go see him and discuss those issues with

13   him.

14   THE COURT:  Okay.  That's fine.  I'll do that.  But for

15   the time being, I don't see a conflict in Mr. Casuso continuing

16   in this case as his representative.  I will advise -- will you

17   give Mr. Mejia your card, Mr. Cohen, so that he can call you if

18   he decides that he wants to call you?

19   And is there anything further I need to do today,

20   Mr. Casuso?

21   MR. CASUSO:  Yes, Judge.  You're probably going to hate

22   me for this, but could we do the continuation of the hearing

23   some other day other than tomorrow?

24   THE COURT:  I can put you -- it's a little late to be

25   telling me.

1        MR. CASUSO:  It's really important, Judge, I feel.

2        THE COURT:  Okay.  I can do it during my criminal duty

3    week, and I'll tell you what I'm going to do.  I can set it for

4    Thursday day the 30th.  Is that a good date?

5        MR. CASUSO:  Fine.

6        THE COURT:  Okay.  And that way, Mr. Norkin, you can

7    coordinate with the prison.  What time -- I'd like to do it

8    Thursday morning and I'll just set it -- I'll set it for 10:30

9    Thursday morning, but it will be on the duty calendar so

10   hopefully it will be -- I don't have anything on the duty

11   calendar for Thursday, like Monday and Tuesday are really backed

12   up.  I don't know about Wednesday, but it's likely that it might

13   be backed up.  But Thursday morning I'll set it for 10:30.

14   Hopefully it will be a short calendar, we'll get to it right at

15   10:30.  If not, we'll just do it when we can.

16       MR. CASUSO:  Okay.  Thank you, Judge.  Thank you.

17       THE COURT:  Okay.  So 10:30 a.m. and Mister --

18       MR. NORKIN:  Judge, if I may, just one comment on that

19   because we're going to have Mr. Lobo appear by phone.

20       THE COURT:  Yes.

21       MR. NORKIN:  I have a feeling that the BOP is not going

22   to be able to have him just kind of on stand-by, so I'll have

23   him -- try to have him at 10:30, but I have a feeling they're

24   going to tell me if it's like float and we'll call you when we

25   can, I think they're going to give me some push back on that.

1           THE COURT:  It will be at 10:30, or given that

2    situation I'll interrupt the duty calendar to handle it.  You

3    know, if I'm in the middle of a detention hearing I'll need to

4    finish the detention hearing.

5           MR. NORKIN:  Right.

6           THE COURT:  But if -- you know, if I've got six

7    detention hearings for Thursday morning and I've got four left

8    to do, I'll just finish the one I'm in the middle of.

9           MR. CASUSO:  And I'll have the waiver signed by Mr.

10   Lobo.

11          THE COURT:  You should have it by then, yes.

12          MR. CASUSO:  I should have it by then.

13          THE COURT:  Okay.  Fine.  Okay.  So --

14          MR. CASUSO:  Okay.

15          THE COURT:  Okay.  So Mr. Lobo's portion of the Garcia

16   hearing will be 10:30 on Thursday, December 30th.  No.  November

17   30th.  Sorry.  That would be setting it off.  Is there anything

18   -- is that a good date for you, Mr. Norkin?

19          MR. NORKIN:  Yes, Your Honor.

20          THE COURT:  Okay.  Mr. Casuso?

21          MR. CASUSO:  Fine, Judge.

22          THE COURT:  Okay.  And so Mr. Cohen?  It will be the

23   same situation.

24          MR. COHEN:  And if I'm not available, somebody from my

25   office will certainly be in court at duty.

1        THE COURT:  One would hope.

2        MR. COHEN:  Yes.  Somebody will be there for the Public

3    Defender's Office.

4        THE COURT:  Okay.  Okay.  So thank you very much.

5    We'll be in recess.

6        MR. CASUSO:  Thank you, Judge.

7        MR. NORKIN:  Thank you, Judge.

8        THE COURT:  Sorry, Alicia.

9        (PROCEEDINGS CONCLUDED)

10                        *  *  *  *  *

11                   C E R T I F I C A T E
     I certify that the foregoing is a correct transcript from the
12   digital audio recording of proceedings in the above-entitled
     matter.

13

14   4/8/2020                /s/ Dawn M. Savino
     Date                    DAWN M. SAVINO, RPR

15

16

17

18

19

20

21

22

23

24

25

**PROCEEDINGS RECORDED BY COURTROOM DIGITAL RECORDER**
**TRANSCRIPT PRODUCED BY MANUAL STENOGRAPHY**
**AND COMPUTER-AIDED TRANSCRIPTION**